IN THE

# SUPREME COURT

OF

# OREGON.

Decided 14 September, 1898.

## NICKERSON *v.* NICKERSON.

[48 Pac. 423; 54 Pac. 277.]

1. APPEAL—ABATEMENT OF ACTION.—The death of the husband pending an appeal by him from a decree of divorce which determines the property rights of the parties, does not abate the action nor the appeal; but both survive to the heirs of the deceased: *State* v. *Martin*, 30 Or. 108, cited.

2. DIVORCE—CRUELTY.*—It is no ground for divorce that plaintiff was unable to get along with defendant's son by a former marriage, who was impudent, saucy, and sometimes abusive, to her, and that defendant refused to send away his son when plaintiff said one of them must go, and that on her returning, and attempting to enter the house, she was prevented by the son from doing so; the conduct of the son not having been encouraged or approved by defendant.

From Linn : HENRY H. HEWITT, Judge.

Suit by Elizabeth M. Nickerson against Hugh Nickerson for a divorce on the ground of cruelty, in which she had a decree. Defendant appealed and died, whereupon there was a motion to dismiss the appeal, which was denied and the cause finally reversed.

MOTION OVERRULED : REVERSED.

*NOTE.—A monograph of fifteen pages on Cruelty as a Ground for Divorce is printed in 65 Am. St. Rep. 69, where the authorities (including the Oregon cases) are grouped in proper classes. See, also, authorities collected in a note, Cruelty and Inhuman Treatment as a Ground for Divorce, 6 L. R. A. 187, and Drunkenness as Affecting Cruelty, 34 L. R. A. 454.—REPORTER.

For appellant there was a brief over the name of *Whitney & Newport*, with oral arguments by *Messrs. N. M. Newport, Melvin C. George*, and *Wm. M. Gregory*.

For respondent there was a brief over the name of *Weatherford & Wyatt*, with oral arguments by *Mr. Jas. K. Weatherford*.

ON MOTION TO DISMISS THE APPEAL.

MR. JUSTICE WOLVERTON delivered the opinion.

1. The plaintiff, on January 27, 1896, obtained a decree of divorce against the defendant, and thereby the title to an undivided third of defendant's real property. The defendant sought a divorce, also, by cross bill, which was dismissed. After an appeal had been perfected the defendant died, and both parties, by their respective attorneys, upon suggesting his death, filed motions to dismiss the appeal, but for very different purposes. Counsel for defendant claims that his death abates the suit, and that this Court should dismiss the appeal, with directions to the court below to dismiss the suit, so that the relation of the parties would then stand as if no suit had ever been begun or decree rendered; while the plaintiff claims that defendant's death abates the appeal only, and that the decree of the court below remains in full force and effect, as a final determination of the rights of the parties thereto. Neither position can be maintained. In *Day* v. *Holland*, 15 Or. 464 (15 Pac. 855), it was decided that under the Code procedure an appeal from a decree does not break it up nor vacate it, and that it may be carried into execution notwithstanding the appeal, unless stayed by a supersedeas undertaking. We are aware that there is a strong dis-

senting opinion in the cause cited, wherein cogent reasons are given why the old equity practice should still prevail in that regard, notwithstanding the innovations of the Code; but we feel bound by the prevailing opinion, and are constrained to follow it as a precedent. It is provided by statute that "No action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue;" and that "An action for a wrong shall not abate by the death of any party, after the verdict has been given therein, but the action shall proceed thereafter in the same manner as in cases where the cause of action survives." Hill's Ann. Laws, §§ 38, 39. These appear to be all the statutory provisions pertaining to the subject.

It is quite apparent, from the very nature of things, that the cause of suit does not survive the death of a party where the only relief sought is a dissolution of the marriage relations, for death effectuates more surely the very end which it is the especial purpose of the suit to accomplish. As was said by COTTON, L. J., in *Stanhope* v. *Stanhope*, 11 Prob. D. W. 103, 105, "It would be a singular thing, if, after the marriage had been dissolved by death, there were power to declare it at an end on another ground." The authorities are uniform upon this proposition: See *Barney* v. *Barney*, 14 Iowa, 189; *Wilson* v. *Wilson*, 73 Mich. 620 (41 N. W. 817); *Kirschner* v. *Deitrich*, 110 Cal. 502 (42 Pac. 1064); *Pearson* v. *Darrington*, 32 Ala. 253; *McCurley* v. *McCurley*, 45 Am. Rep. 720. But, where the consequences of the divorce are such as affect the property rights of the parties to the suit, the heirs or personal representatives may have such an interest in the litigation as that the cause will survive, not for the purpose of continuing the controversy touching the right of divorce within itself; but

for the ascertainment of whether the property has been rightfully diverted from its appropriate channel of devolution. The present case furnishes a good illustration. Had the defendant died prior to the divorce, his real property would have descended to his heirs, subject to his widow's right of dower, but under the decree she obtains an undivided one-third interest absolute therein, results of very different significance. So that the heirs have an interest in continuing the controversy to determine whether they have been rightfully or wrongfully affected in their property rights : See *Thomas* v. *Thomas*, 57 Md. 504; *Downer* v. *Howard*, 44 Wis. 82.

It has been suggested that the relief which the statute affords by giving the prevailing party in the suit a one-third interest in the lands of the spouse is but an incident to the divorce, and operates as a penalty for a violation of the marital relations. And so it is, but it does not follow that the suit, after divorce granted, or even that the appeal, abates upon the death of a party thereto. At common law the general rule is that criminal actions abate with the death of the accused, but if the crime be that of treason, or felony which works an attainder, the heirs or personal representatives may prosecute an appeal to reverse the attainder (*State* v. *Martin*, 30 Or. 108, 47 Pac. 196), although the forfeiture is but an incident of the action. The cause was permitted to survive to prevent a wrongful devolution of the property of the deceased, should it appear that the judgment of attainder was erroneous. The analogy is apparent without elucidation. The clause of the statute preventing either party from contracting marriage with a third until the period allowed for the appeal has expired is a wise precautionary measure to prevent the evil results which might arise from conflicting marriage relations should the decree of the court below be

reversed, but was not intended to suspend the decree. Such a decree has the "effect to terminate the marriage," and its finality must be governed and determined by the same rules as are applied in other suits in equity. From these considerations we conclude that the suit did not abate by the death of the defendant, except as it pertains to the cross bill, neither does the appeal, but that the cause and the appeal both survive to the heirs of the deceased, and they may prosecute the cause in this Court for the purpose of determining whether the divorce was rightfully granted, to the end that conflicting property rights as between them and the plaintiff may be settled and determined. Both motions will therefore be disallowed.

MOTIONS OVERRULED.

ON THE MERITS.

MR. JUSTICE BEAN delivered the opinion.

2. This is a suit for divorce. The allegations of the complaint are to the effect that a son and daughter of the defendant by a former marriage grossly mistreated and abused the plaintiff, with the defendant's consent and knowledge, and so poisoned his mind against her that, on or about the first of June, 1894, he compelled her to leave home, and remain away, and he has since refused to live and cohabit with her as his wife. The plaintiff had a decree in her favor, and the defendant appealed.

The evidence is somewhat voluminous, but we do not deem it necessary to discuss it at any considerable length. It appears that the plaintiff and defendant were married in March, 1883, and were both at the time well advanced in years, the plaintiff being sixty years of

age and the defendant some six years her senior.   Both parties had been previously married, and two of defendant's minor children—a boy named Elmer, about twelve, and a daughter named Nettie, some four years of age—became members of plaintiff's and defendant's family, and continued to live with them until the time of their separation.   The personal relations between the plaintiff and defendant were at all times of the most pleasant character, and no claim is made that the defendant ever mistreated, abused or neglected her in any way.   The unfortunate separation was the result of the inability of plaintiff to live agreeably with the children of the defendant, and especially his son, Elmer.   It seems that for some time before the separation the relations between the plaintiff and Elmer were unpleasantly strained, and she claims that she remonstrated with the defendant about Elmer's conduct, and that he refused to control him, and that finally, because she could not get along with Elmer, the defendant compelled her to leave home.

For the defendant the contention is that the plaintiff left voluntarily because he would not 'drive his son away from home, and we are of the opinion that this is the most probable theory of the case.   It is simply one of those unfortunate separations which often take place between a husband and wife on account of the children of one or the other by a former marriage.   That Elmer was impudent, saucy, and sometimes abusive, to his stepmother, is unquestioned; but his conduct was not of such a character as to justify her in leaving her husband on that account, even if, as she says, he was unable to control his son.   Elmer's conduct was neither encouraged nor approved by the defendant, and he seems to have done all that could reasonably be expected of him to promote harmony in the family.   And, besides, plaintiff was not altogether blameless.   She did not show

that kindly regard for the welfare of her stepson which should characterize the conduct of an adopted mother. She was indifferent to his comfort.  He was locked out of the house, and compelled to sleep in the barn or elsewhere, if he was not home by a given time; he went without his meals if he was not on hand promptly at meal times, and in many other ways the conduct of the plaintiff was such as was calculated to harass, annoy, and vex him.  Of course, this was no excuse for his conduct, but it does afford a reason why it should not be deemed sufficient to support a decree of divorce.

The plaintiff claims that she was driven away from home by the defendant, but the evidence of numerous witnesses is to the effect that she had repeatedly said that she and Elmer could not live in the same house, and that, if the defendant did not make him leave, she would go herself; and these witnesses are practically corroborated by her own testimony, for, when asked on her direct examination to tell all that occurred at the time her husband told her to leave, she said : " 'Well,' he says to me, he says, 'you want me to do what you wouldn't do yourself,' and I says, 'What's that?'   I asked him what that was, and he says, 'You want me to drive Elmer off.' I says, 'No, I never said anything of that kind; I never told you to do that; I never said any such thing.'  Then he says, 'I want you to go and talk with Elmer,' and I says, 'No, I won't do that;' and then he wanted me to go with him, and I says, 'No, I won't do any such thing.' Then he says, 'That settles it; you will have to go.' " And the testimony of the other witnesses on behalf of the plaintiff, who were present at the time, is substantially to the same effect.   This indicates very clearly that plaintiff had suggested, if not demanded, that the defendant should compel Elmer to go away from home, and that the matter was being discussed by them at the time ; and,

further, that the defendant showed a much stronger disposition to have the plaintiff make her peace with Elmer than she herself exhibited, and, when she refused to make any attempt whatever to reconcile her difference with him, the defendant said, ''That settles it; you will have to go,'' meaning, no doubt, that such could be the only result of the conditions imposed by her. Much is claimed for the fact that a few days after she left home she returned, and, on attempting to enter the house, was prevented from doing so by Elmer. But both parties were no doubt to blame in this transaction. She was evidently attempting to assert her right, as she claimed, to enter the house, whether she was welcome or not; and Elmer, prompted by a like spirit, was endeavoring to prevent her from doing so. Nothing can be justly claimed on either side from this incident. The whole secret of the trouble in this case, as clearly appears from the testimony, was the inability of the plaintiff to live amicably with the defendant's children; but that is no ground for a divorce. Such a condition of affairs is one of the probable incidents of a marriage of that character.

And, besides, this case smacks very largely of a suit instituted for the purpose of acquiring property rights, rather than a dissolution of the marriage contract. At the time it was instituted the defendant was seventy-six years of age, in feeble health, and has since died. Before the consummation of the marriage, both parties were the owners of real and personal property of about equal value, in view of which they entered into an antenuptial contract, by which it was stipulated and agreed ''that the property of each shall be and remain separate, and that we do waive all claim of right of dower and curtesy to the personal or real property of each other that the laws of Oregon do or may permit, and that the debts of each shall be paid out of the property of the party contracting such debts;'' and

"that at the decease of either of the above contracting parties that the other or remaining party will deliver up any or all property belonging to the deceased, to his or her legal heirs of the body, or any other legal representatives, and to claim no part or portion of the same." It is claimed, and may be conceded for the purposes of the case, that, notwithstanding this contract, the successful party in a proceeding for a divorce would, under the statute, be entitled to an undivided one-third of the real property of the other, yet it affords a cogent reason why this Court, before affirming the decree of the court below, should be certain that it is fully supported by the testimony, when its only effect is to vest the title to a large amount of property belonging to one of the contracting parties in the other, contrary to the spirit, if not the letter, of an antenuptial contract solemnly entered into. From a careful examination of all the testimony in this case and the argument of counsel, we are constrained to hold that the decree of the court below should be reversed, and it is so ordered.

REVERSED.

Decided at PENDLETON, 13 August; rehearing denied 14 September, 1898.