Argued Oct. 3, decided Oct. 10; rehearing denied Nov. 20, 1911.

## EVANS v. EVANS.

[118 Pac. 177.]

JUDGMENT—DEFAULT—VACATING—TIME—"NOTICE."

1. The word "notice," as used in Section 103, L. O. L., permitting a court in its discretion, at any time within a year after notice thereof, to relieve a party from a judgment taken against him by mistake, etc., means "knowledge" by the moving party of the entry of a judgment.

DIVORCE—DEFAULT JUDGMENT—VACATING—EVIDENCE.

2. On defendant's motion to set aside a default divorce decree for plaintiff on the ground that plaintiff's affidavit for service by publication falsely stated his belief as to defendant's residence, evidence *held* to show that plaintiff willfully deceived the court as to his belief and knowledge of defendant's residence.

DIVORCE—DEFAULT JUDGMENT—VACATING.

3. That plaintiff has remarried since procuring a divorce from defendant is not ground for refusing to set aside the decree for plaintiff's fraud in procuring an order for service by publication, by falsely stating his belief as to the place of defendant's residence.

DIVORCE—VACATION—GROUND—FRAUD UPON COURT.

4. Where plaintiff deceived the court in his affidavit for an order of publication in a divorce action, by falsely stating his belief as to the place of defendant's residence, there was an abuse of discretion in refusing to vacate a default decree for plaintiff, on defendant's application within a year, as required by statute.

From Clackamas: JAMES U. CAMPBELL, Judge.

This is a suit by Charles Evans against Angeline Evans for the dissolution of their marriage contract, in which case the defendant moved to set aside a decree for plaintiff. From an order of the circuit court denying the motion, defendant appeals.

Reversed, decree set aside, and cause remanded for further proceedings.                    REVERSED.

For appellant there was a brief over the names of *Mr. Richard Sleight* and *Mr. C. A. Lamoreux,* with an oral argument by *Mr. Sleight.*

For respondent there was a brief and an oral argument by *Mr. W. H. Fowler.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal by the defendant from an order of the circuit court for Clackamas County, refusing to set aside a default decree, and for leave to answer a complaint. The facts are that on October 19, 1906, a suit was commenced in that court by Charles Evans against Angeline Evans, to secure a dissolution of their marriage. The complaint stated the requisite facts to confer jurisdiction of the cause, and alleged cruel and inhuman treatment on the part of the defendant towards the plaintiff as the ground for the relief sought. Personal service of process could not be made upon the defendant, whereupon the summons was undertaken to be served by publication, the court's order therefor being based upon plaintiff's affidavit, which, so far as material, is as follows:

"That defendant is not a resident of, nor is she within the State of Oregon; that defendant's last known place of residence or abode was the town of Mankato, state of Minnesota; that plaintiff has made due and diligent search to learn or ascertain the present residence or whereabouts of said defendant, and has in this behalf inquired of and from Miss Anna L. Giless, St. Johns, Oregon, and Arthur

H. Johnson, East Portland, Oregon, persons who are acquainted with or most likely to know the present residence, abode, or whereabouts of defendant, and that he is informed by said last-mentioned persons, and each of them, that they know that the defendant is not now a resident of, nor is she within the State of Oregon, and that they verily believe that said defendant is now a resident in the town of Mankato, state of Minnesota, and that said last-mentioned place is the last-known place, residence, abode, or whereabouts of said defendant."

Certified copies of the complaint and of the summons were mailed to Mankato, Minnesota, addressed to the defendant, and the summons was duly published for the required time in a newspaper printed at Oregon City. No appearance having been made or answer filed by the defendant, her default was entered, whereupon the cause was referred, and from the testimony taken findings of fact and of law were made, and based thereon a decree of divorce was rendered, April 15, 1907.

This motion was interposed April 18, 1910, when an answer was tendered, denying the allegations of the complaint as to the cruel and inhuman treatment charged, and praying that the suit for a divorce might be dismissed. In support of the application to set aside the decree, defendant filed an affidavit in which she gives the several places in which she and the plaintiff lived together, saying:

"There has not been a day since the marriage that he could not have learned by telegram and by letter the post office address and place of domicile of defendant, and all about her, and what she was doing."

She further deposed that in the summer of 1904 the plaintiff left Columbus, Wisconsin, where she was caring for her sick mother. That after the death of the latter the affiant went to Felton, Minnesota, where she found him living in a rented house with Miss Anna L. Gillness (Giless), whom he introduced to her as a poor orphan

he wished to adopt, but whom he represented to others at that place as his daughter. That about March 1, 1905, the defendant complained to plaintiff of the presence of Miss Gilness in their home, whereupon he beat and choked affiant, and his ill treatment became so conspicuous that quite a number of the women of Felton ordered such woman to leave town within 24 hours. That the command was obeyed, and about June 25, 1905, plaintiff abandoned and deserted defendant, since which time he has contributed nothing toward her support. That she learned he went to Fargo, North Dakota, where he joined Miss Gillness, with whom he departed to the Pacific Slope. She states what efforts she made to find him in Oregon without success. That on January 9, 1910, she learned that he visited Columbus, Wisconsin, to attend his mother's funeral, and was then informed that he was living with Anna L. Gillness, claiming that she was his wife.

"All of the information regarding his being divorced from defendant and married to the Gillness woman was obtained by her since the 1st day of January, 1910, and prior to that date she had no notice, knowledge, or information by which she could discover these facts. She then retained E. E. Brossard, of Columbus, Wisconsin, to investigate the matter of plaintiff's residence, divorce, and the like. On February 12, 1910, defendant first saw a certified copy of the judgment roll in plaintiff's divorce action. The statements contained in plaintiff's affidavit for an order for publication of summons as to defendant's place of residence and domicile were false and untrue, and were known by plaintiff to be false and untrue."

The defendant further swears that she never was in Mankato, Minnesota, except possibly to pass through such place on the train; that she never received the summons in the suit for a divorce, and had no knowledge of the pendency of the proceedings until January, 1910, and was ignorant of any fact or circumstance that could have led to the discovery thereof.

The defendant's sworn declarations are corroborated by the affidavit of Mae Dahl, to the effect that at Felton, Minnesota, in March, 1905, the affiant visited the defendant, whom she found in a serious condition, with marks of violence on her face and throat, and learned that she had been severely beaten by the plaintiff, and that a delegation of women of that place waited upon plaintiff and Lucille Evans, the young woman whom he represented as his daughter, ordered her to leave, and threatened her if she did not comply with the command, and that the plaintiff suddenly disappeared from that place about June, 1905. The sworn statements of the last affiant are substantially confirmed by the affidavits of Otto Dahl, Lewis Gilbert, and Catherine Barry, who reside at Felton, Minnesota.

The affidavit of Arthur H. Johnson, the person mentioned in the affidavit for the service of the summons by publication, is to the effect that he is the plaintiff's cousin, and acquainted with the parties hereto, each of whom he knew in Wisconsin. He deposed as follows:

"Affiant further says that the plaintiff above-named never at any time inquired of this affiant, either orally or in writing, the residence, abode, whereabouts, or post office address of the defendant. That affiant never at any time told plaintiff, or wrote him, that the defendant was not a resident of Oregon, or that he believed that the defendant resided in the town of Mankato, state of Minnesota, and never told or wrote any one to that effect. That affiant never heard of defendant residing in the town or city of Mankato, Minnesota."

The affidavit of Albert Voth is to the effect that in January, 1910, when plaintiff visited Wisconsin, he evidently endeavored to conceal from the people of Columbus, in that state, the place of his residence. This declaration is corroborated by the affidavit of E. E. Brossard, the defendant's attorney.

The plaintiff filed an affidavit, controverting the sworn declarations hereinbefore set forth, and stating in effect that the affidavit for the service of the summons in the divorce suit was made under the honest belief that defendant's residence and abode were then at Mankato, Minnesota; that before making such affidavit he telephoned Arthur H. Johnson, a resident of Portland, Oregon, who informed him that the defendant had left Felton, Minnesota, to attend a normal school at Mankato, in that state; that affiant has since been informed that she left Felton to attend a normal school at Moorehead, Minnesota. The plaintiff further deposed that defendant's motive in seeking to set aside the divorce is to secure a part of the property which he subsequently inherited from his parents; that by the means which she thus adopted an effort has been made to impose upon the court and to blackmail him; that relying upon the validity of the divorce he again married, and if the decree is set aside it would ruin him financially, make him technically guilty of a crime, and place upon his present wife a fearful social position without any fault of either. The plaintiff's counter affidavit is corroborated by that of his present wife.

An affidavit was filed by Arthur H. Johnson, explaining his sworn statement made in behalf of the defendant, in referring to which he deposed as follows:

"That since the making of such affidavit I have had a conversation with one of the attorneys for the plaintiff herein, and have been by him shown certain papers with a view of refreshing my memory as to the contents of the affidavits heretofore mentioned; that at the time I made said affidavit I had in mind either a communication in person or by letter; that I am now informed that the alleged communication and inquiry as to the address of the residence and abode of the defendant was by telephone; that I had at said time been informed that the defendant had gone to a normal school to take a course

therein, but that my memory does not carry me at this time to state whether or not I was informed as to what normal school the defendant attended; that as the conversation over the telephone took place a long time ago, and as it is possible that the said conversation and inquiry did take place, but that if it did my recollection now is the same as it was at the time I made the first-mentioned affidavit, to wit, that I do not now remember the conversation in question,although I do remember that at that time I had been informed that the defendant was in some normal school."

The foregoing is deemed a fair synopsis of the material statements contained in the several affidavits offered by the respective parties, and from the showing thus made the question to be considered is whether or not the plaintiff's sworn declaration as to the defendant's residence evidences such a degree of fraud practiced by him, in order to make it appear that the court had acquired jurisdiction over her person, as would render a refusal to set aside the decree and to permit an answer to be filed an abuse of discretion.

1. The statute declares that a court in its discretion may, "at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." Section 103, L. O. L. The decree of divorce was given April 15, 1907, and this motion was not interposed until April 18, 1910. It will be remembered that the defendant's affidavit states that prior to January 1, 1910, she had no notice, knowledge, or information that a decree of divorce had been rendered, and had never received a copy of the summons or complaint in any suit instituted for that purpose. If by the use of the word "notice," in the section of the statute referred to, the legislature intended to give to the term its technical sense, the enactment, without employing many more words, could have provided that, "at any time within one year after a judgment was entered,"

the court might set it aside for the reasons stated. Since the language suggested has not been employed, we believe the word "notice" should be construed to mean "knowledge," and such being the case the application herein was made within the time limited. *Fildew* v. *Milner,* 57 Or. 16 (109 Pac. 1092.) As many of the defendant's relatives in Wisconsin lived near the plaintiff's kinsmen, he could have ascertained her place of residence and mailed her a copy of the complaint and summons. It will be kept in mind that in the affidavit for the service of process by publication the plaintiff states that he obtained his information respecting the defendant's residence in part from the woman with whom it appears he came to the Paciffic Slope, whom he subsequently married, and who may have been the cause of the inhuman treatment alleged in the complaint as the basis for his suit for divorce. Arthur H. Johnson's first affidavit, offered in support of the motion herein, contradicts every statement contained in the plaintiff's sworn declaration as to a part of the source of his information regarding the defendant's residence. Johnson's second affidavit, made at plaintiff's request, is very guarded, but, considering them both in their proper relation to each other, we think the latter affidavit does not sufficiently overcome the positive assertions to be found in the former.

2. Looking at the entire case as made by the affidavits, we feel satisfied that, though there was a studied effort on plaintiff's part to comply with the several requirements of the letter of the statute, so as to make the record in the divorce suit appear valid, the spirit of the law was willfully violated by him, and no notice was given to the defendant of the attempt to secure a dissolution of the marriage.

3. The deduction thus reached places the woman, whom the plaintiff now claims to be his wife, in a serious social condition, but believing she is not faultless the conse-

quences must fall upon her.   If, however, she is an innocent victim, the effect of the determination cannot be mitigated, for in nearly every punishment that follows a violation of the law some guiltless person, who is a relative of the accused party, necessarily suffers humiliation for the sentence which is imposed.   If by cross-complaint the defendant sought a divorce and alimony, her application to set aside the decree herein might afford some ground for denying the motion interposed for that purpose; but the prayer of her answer is that this suit be dismissed.

4. Believing that plaintiff deceived the court when the divorce was granted, and that such a showing of his conduct has been made that a denial of the motion to set aside the decree amounts to an abuse of judicial discretion, the action of the court in this respect is reversed, the decree set aside, leave is granted to file the answer tendered, and the cause is remanded for such further proceedings as may be necessary, not inconsistent with this opinion.                              REVERSED.