Argued December 12, 1933; reversed January 2; rehearing denied
January 23, 1934

## STURM *v.* COOPER ET AL.

(28 P. (2d) 231)

*W. J. Cooper,* of Gresham, for appellant.

*Jos. E. Hedges,* of Oregon City, for respondents.

BELT, J. Ludwig Sturm and the plaintiff, Melvina V. Sturm, were married October 4, 1923. They lived together about seven and one-half months. On Novem-

ber 12, 1925, the husband instituted suit for divorce in Clackamas county, based on desertion. No children were born as a result of this marriage, although the plaintiff herein had sixteen children by a former marriage. Service was obtained by publication of summons. Sturm secured a decree by default on February 29, 1926. He died on December 4, 1931. On July 19, 1932, the plaintiff instituted this suit to set aside the decree upon two grounds: (1) Lack of jurisdiction of the subject matter and of the parties; (2) fraud and perjury in obtaining the decree. From a decree dismissing the suit, the plaintiff appeals.

■ In view of the death of Ludwig Sturm, the complainant in the divorce proceeding, the sole reason for the maintenance of the instant suit is the determination of property rights. Death brought about a dissolution of the marital tie: *Nickerson v. Nickerson,* 34 Or. 1 (48 P. 423, 54 P. 277); 19 C. J. 169. The rule is thus stated in 9 R. C. L. 453:

"* * * where the judgment or decree affects property rights, the death of one party or both parties does not affect the right of the unsuccessful party or his or her representative to institute vacation proceedings. This is permitted not for the purpose of continuing the controversy touching the right to a divorce or annulment itself, but for the ascertainment of whether the property has been rightly diverted from its appropriate channel of devolution."

The first ground alleged for setting aside the divorce decree, viz., the lack of jurisdiction, was practically abandoned in the circuit court, as the undisputed testimony showed that Ludwig Sturm was a bona fide resident of Clackamas county.

■■ A presumption exists in favor of the validity of the decree. Plaintiff has the burden of proof relative

to the issue of fraud. Ludwig Sturm is not here to give his version of the matter. Under such circumstances— particularly in view of the lapse of time before suit was commenced to vacate the decree—the evidence to establish fraud should be clear and convincing. With these well established legal principles in mind we pass to the question of fact: Did Ludwig Sturm obtain the decree of divorce through fraud and perjury?

In the affidavit for publication of summons which Ludwig Sturm made on January 2, 1926, he alleged that he had made the following inquiries concerning the whereabouts of his wife: (1) Ray Williams, a former son-in-law of plaintiff, residing in Portland, Oregon, who said that he had heard plaintiff was at Echo, Umatilla county, Oregon; (2) Elijah Adams. former husband of plaintiff, who resided in Portland, Oregon, and who stated that he did not know where the plaintiff could be found; (3) Elsie Poff, a daughter of plaintiff, who stated that she did not know where her mother could be found. The plaintiff concedes that the affidavit upon its face is regular and, if its averments were true, was sufficient to authorize the order of publication of summons, but it is her contention that the averments above referred to are false and that Sturm knew or ought to have known that plaintiff resided within the state of Oregon and could have been personally served with summons therein.

In support of the motion to set aside the decree, Ray Williams made an affidavit to the effect that Sturm never made any inquiry of him as to where Melvina Sturm could be found and that he did not tell Sturm he had heard that she was at Echo, Oregon. Elijah Adams testified that he had met Sturm on a street car in Portland, Oregon, after the separation from his wife, that Sturm never made any inquiry of

him as to where she could be found and that he never at any time told Sturm that he did not know where his wife was. It appears that Adams was somewhat uncertain as to the time that he saw Sturm on the street car, but we think it is established with reasonable certainty that it was after Sturm and his wife had separated. Elsie Poff Christian, the daughter of plaintiff, to whom reference is made in the affidavit for publication of summons, testified that she had resided in Portland for eleven years, that she had not seen Mr. Sturm since 1922, and that never at any time did decedent ask her where her mother was. Lloyd Rowley, husband of Sarah Rowley, a daughter of Melvina Sturm by her former marriage, testified that he saw Sturm on a street car a few days before Christmas, 1925, and asked him to have Christmas dinner with him and his wife. He states that he told Sturm on that occasion that Mrs. Sturm was in Gresham, but received no response to either his information or his invitation. It will be recalled that Sturm commenced divorce proceedings on November 12, 1925; that the meeting with Rowley, if the testimony is to be believed, occurred about five weeks later, and that the affidavit for publication of summons was executed about ten days after Rowley had informed him that Mrs. Sturm was in Gresham.

After about seven and one-half months of married life, Ludwig Sturm and his wife went to Portland, Oregon, on about May 19, 1924. Both had been working in eastern Oregon for a month. They registered at a cheap hotel and during the evening attended church at the ''Mission''. The next morning they separated, he to hunt for work and get their baggage, and she to buy a pair of shoes. She testifies that she told him she would return to the room at the hotel,

but that when she did so she found the room locked with the baggage inside. She states that she has never seen him since, although she has made every effort to find him. She spent that night at the home of her daughter, Blanche Hoover, at Gresham, returning the next day and for several days thereafter in an effort to locate her husband. According to her testimony, she tried not only at the hotel but at every place in Portland where she thought he might be found, including the "Mission" and "Minn's Resort". Some months later she enlisted the services of W. J. Cooper, attorney at law, to assist her in this search. Mr. Cooper states that he made inquiries at "Minn's Resort" and, learning that Sturm sometimes called there for mail, advised Melvina to write him at that address. She avers that she had letters written for her and sent to Sturm in care of "Minn's Resort" but that, although these letters were never returned to her, she received no reply. Among those whom Mrs. Sturm testified to having interviewed concerning her husband's whereabouts was one Henry Caseburg, now deceased. Mr. Caseburg is said to have informed her that, while he knew where her husband was, he feared to tell her as he had been instructed by Sturm not to do so. Mrs. Sturm secured work in a cannery at Gresham and lived there for several years thereafter, with the exception of brief intervals during which she worked in Portland.

Plaintiff testified that she first heard of the death of her husband from her daughter, Elsie Poff Christian, who saw a newspaper announcement of the same, and that she did not learn of the divorce proceeding until March 24, 1932. If such testimony is to be believed, the lapse of years between the time the decree of divorce was rendered and the time of the commence-

ment of the instant suit would not preclude plaintiff from the relief sought.

■ If it be assumed that Sturm inquired of Elsie Poff Christian where her mother was, it is highly improbable that this daughter stated to him that she did not know. She had lived in Portland for many years, had often visited with her mother, and undoubtedly knew that the latter could be found at Gresham, Oregon. Sturm and his wife had visited several times at Gresham with Mrs. Blanche Hoover, a daughter who had resided there for many years. If Sturm was acting on good faith, it is strange that he did not inquire of Mrs. Hoover about her mother. Another daughter of the plaintiff, Mrs. Mable Conley, had lived on the same ranch at Lena, Oregon, for fifteen years. Sturm had worked on this ranch for one week following his marriage. It was a mere subterfuge for Sturm to send the summons and complaint to Echo, Oregon, for service, since the latter place is thirty or forty miles from Lena. We are convinced that Sturm did not want to find his wife. Unless all the witnesses on behalf of plaintiff have perjured themselves, the affidavit that Sturm made to obtain order for publication of summons must be false. An unusual amount of thought and study has been given to the record in this case and we are constrained to find that Sturm perpetrated a fraud upon plaintiff and the court in obtaining a decree of divorce.

It follows that the decree of the lower court is reversed and the cause remanded with directions to vacate the divorce decree. Plaintiff is entitled to costs and disbursements.

BEAN and ROSSMAN, JJ., concur.

RAND, C. J., dissents.