Submitted March 23, affirmed as modified April 13, 1972

PIERPOINT, *Appellant, v.* PIERPOINT,
*Respondent.*

495 P2d 1236

Gary G. Jones and Rhoten, Rhoten & Speerstra, Salem, for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

Plaintiff appeals from the part of a divorce decree which approved a property settlement between the parties. Defendant has not filed a brief.

Plaintiff filed a complaint seeking a divorce and approval of the property settlement agreement. She and her husband had the same attorney. After preparing the property settlement agreement and getting it signed by both parties, filing the complaint and taking a default order, the attorney, through an injury, was physically incapacitated. It became necessary for the parties to obtain new counsel. Plaintiff's new counsel filed amended pleadings for her in which plaintiff sought to avoid the property settlement agreement.

The agreement required the husband to transfer to the wife home property which they jointly owned and that she would within 90 days of the decree pay to him $10,000 therefor. Evidence indicates that this property is worth about $29,000 and has no lien upon it. In the agreement the husband agreed to transfer furniture and fixtures in the home to the wife and assume indebtedness for these in a sum of something less than $2150. The husband agreed to retain and pay for his 1971 Lincoln Continental automobile and plaintiff agreed to retain and pay for her 1971 Ford Thunderbird automobile.

The parties had been married for 30 years and their family was grown. The wife was earning a gross of approximately $624 monthly, and the husband $836 monthly. The cause for the divorce was that the defendant left plaintiff and lived openly for several months in the same city with another woman, to whom he gave engagement and wedding rings. This woman, in connection with a business she had, took the defendant's name, and the defendant's and her name, thus assumed, were entered in an advertisement in the Yellow Pages of the telephone book.

After these things occurred a reconciliation between the parties was effected for about two weeks, but defendant then left plaintiff and went back to the other woman, again openly living with her. At the time the second separation occurred the wife took an overdose of medication. The defendant knew this, and, although he partially denied it, the evidence indicated that when he left, he left her unconscious and unattended until she was found the next day by her brother. She returned from hospitalization within a few days and signed the agreement mentioned at the start of this fact statement.

Plaintiff was under the care of a psychiatrist. The psychiatrist testified that plaintiff was highly dependent upon the defendant and that "[h]er dependency could be considered as one characterized by a high degree of trust." He said she became periodically depressed enough to become psychotic. Then he testified:

"Q  In this frame of mind of Mrs. Pierpoint over the period in 1970 when she was being treated by you, particularly toward the end of August and the early part of September, do you feel she could make an independent judgment or would she be

highly receptive to suggested demands or other statements of Mr. Pierpoint?

"A   I would say that she was because this was the time that the disclosure about the involvement about another woman came out, and promises were made when they were together in my presence to terminate the involvement and get the marriage on a more valid foundation.

"Q   Because of the shattering of this trust, in your opinion would she have signed the documents or done nearly anything Mr. Pierpoint wanted her to do?

"A   Very likely she would have responded to any suggestion or recommendation he would have made, she was so anxious to see the union restored, rehabilitated, or reconciled."

When the defendant left the plaintiff he withdrew $1500 from a joint savings account they had, leaving $1500 for the plaintiff. Thus, the defendant seeks to take $11,500 from the net assets of their joint estate which approximates $32,000, excluding automobiles and furniture. From his $11,500 should be deducted approximately $2150 in indebtedness which the defendant would assume. The evidence was that plaintiff had ceased her employment for a considerable period during the crisis in their marital affairs. We give credit to the testimony of the psychiatrist concerning plaintiff's condition at the time she signed the agreement. Considering that, and the circumstances of the break-up of the marriage, we do not think that the agreement was just.

In *Taylor v. Taylor,* 154 Or 442, 445, 60 P2d 942 (1936), the court said:

"The law favors the maintenance of the marital relation but it does not frown upon contracts between husband and wife, entered into in good faith,

not tainted with fraud, *and without undue advantage being taken by either party in the settlement of their property rights* in contemplation of living separate and apart or of divorce. When such contracts are entered into and are just and equitable, they will be held binding on the parties thereto: *Halstead v. Halstead,* 74 N.J. Eq. 596 (70 Atl. 928); *Hill v. Hill,* 124 Or. 364 (264 P. 447)." (Emphasis supplied.)

In *Prime v. Prime,* 172 Or 34, 41-42, 139 P2d 550 (1943), the court said:

"Even in the case of contracts between husband and wife in anticipation of divorce which merely provide for the present division of their property to the accumulation of which both have contributed, it has been held that equity would refuse enforcement if the agreement was inequitable. In *Hill v. Hill,* 124 Or. 364, 264 P. 447, this court refused to enforce such a contract and disposed of the identical real property which was the subject of the contract according to its own determination of the rights of the parties * * *."

As the court did in those cases, we review the record *de novo.* We place reliance upon the finding of the trial judge, but we must determine that under the evidence his finding was proper if we are to affirm it. As indicated above, we think the circumstances surrounding the making of the agreement and the provisions of the agreement itself are such that undue advantage was taken of the plaintiff. She should not be placed in the position of having to raise such a substantial sum as $10,000 in cash to pay the defendant. She should own the real property. Inasmuch as the defendant is required by the agreement to pay some $2150 in indebtedness owing for personal property which the plaintiff will possess and own, we hold that

she must pay defendant $5000 instead of the $10,000 required by the lower court's decree. In all other respects the decree is affirmed. We do not allow attorney fees or costs on appeal.

Affirmed as modified.