Argued February 23, affirmed April 13, 1972

BRANDT, *Appellant, v.* BRANDT, *Respondent.*

495 P2d 1205

2

*James W. Walton,* Corvallis, argued the cause for appellant. With him on the brief were Ringo, Walton, McClain & Eves, Corvallis.

*Richard D. Barber,* Salem, argued the cause for respondent. With him on the brief were DeArmond, Sherman & Barber, Salem.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

FORT, J.

This suit seeks to set aside a property settlement agreement and a decree of divorce on the ground of fraud. It does so, not by an appeal from the divorce decree nor by a motion pursuant to ORS 18.160, nor by a motion directed to the alimony award incorporated both in the decree and the challenged property settlement agreement, but by an original suit based upon fraud.

The challenge to the agreement itself is based principally on the inclusion of a piece of real estate at its appraised rather than its market value. Its value in the agreement is stated to be $17,600. Plaintiff contends in fact it was worth $30,000 to $32,000. Defendant contends and the evidence conclusively establishes that both parties were aware it was worth more than the appraised value. Mrs. Brandt's attorney wrote Mr. Brandt's attorney during the vigorous and protracted negotiations that it was worth "about $25,000.00." Each party had substantial inherited property. There was also considerable jointly acquired property. Mr. Brandt at no time negotiated with his wife concerning the property settlement personally. All negotiations were carried on between the attorneys at arm's length.[1] The trial court concluded that "the property settlement agreement which is the subject of this suit, when considered in its entirety, is just and equitable." We agree.

Much of the thrust of the complaint arises out of the mental condition of the plaintiff. She had a

---

[1] The record shows that Mrs. Brandt consulted with her attorney frequently on this matter, specifically on January 31, February 12 and 28, March 4 and 5, and April 2, 18, 23 and 29. The agreement itself was signed on April 30, 1968.

long history of mental instability including periods of adjudicated incompetence. One of these preceded the filing of the divorce suit, and a guardian ad litem, Dr. Brooks, superintendent of the Oregon State Hospital, was appointed for her in it. At his request this was terminated about two months before the decree on the ground Mrs. Brandt was again able to take care of her own affairs. About the same time the guardianship of Mrs. Brandt's estate, which was based upon her incompetency and preceded the filing of the divorce suit, was terminated at the request of the guardian, The Pioneer Trust Company, for the same reason. Mrs. Brandt's attorney also represented the guardian in that proceeding.

Following the restoration of her competency the negotiations continued. Mrs. Brandt resumed her regular work as a landscape architect with the Regional Parks Commission and continued to reside separately in a home which she had earlier acquired from a part of the proceeds of her separate inheritance. Mr. Brandt lived separately from her in a jointly-owned dwelling. She continued, however, under the care of the physicians at the Oregon State Hospital. Her condition deteriorated sufficiently that it was decided to administer electroshock therapy. She returned to the hospital and in early April 1968 received a series of treatments ending April 9. By April 15 she was allowed to return to work during the day but slept at the hospital, from which she was finally discharged on May 10. Her doctor testified that the shock treatments temporarily create a confused state of mind and loss of memory, that the mental condition thereafter stabilizes and the memory is progressively regained over a period of four to six weeks except for the particular period during which the treatments

actually took place. He concluded Mrs. Brandt was incompetent on April 30, 1968, when she signed the property settlement agreement, and that this condition continued until May 10, 1968. The default hearing was held on May 6 pursuant to the following waiver, signed by one of Mrs. Brandt's then attorneys:

"This waiver and consent is freely given in consideration of that certain Property Settlement Agreement [dated April 30, 1968] entered into by and between Plaintiff [Mr. Brandt] and Defendant [Mrs. Brandt] to be submitted to the Court for approval."

The decree was signed and filed by the court on May 13, 1968.

Mr. Goodenough, Mrs. Brandt's attorney, testified he was unaware of the electroshock treatments, though he acknowledged he met with her on April 2, the day before the treatments began, and again on April 18, three days after she returned to work, April 23 and April 29, the day before she executed the agreement. He left the state on April 29, and Mrs. Brandt returned to the office on April 30 to sign the agreement in the presence of Mr. Evans, a partner of Mr. Goodenough, who also signed the waiver of hearing above referred to. Mr. Evans likewise was unaware of the shock treatments. Mr. Brandt testified, though the physician had no recollection of it, that he had talked with the doctor twice in early April and knew of the admission of the shock treatments and the mental confusion to be anticipated therefrom, and that he knew of her return to work on April 15.

■ The general rule is:

"* * * [A] judgment against one incompetent at the time of its rendition, and not represented by a guardian or committee, is not absolutely void,

but is, at most, merely voidable." Annotation, 140 ALR 1336 (1942).

In *Sturm v. Cooper,* 145 Or 583, 28 P2d 231 (1934), the court said:

"A presumption exists in favor of the validity of the decree. Plaintiff has the burden of proof relative to the issue of fraud. \* \* \* [T]he evidence to establish fraud should be clear and convincing. \* \* \*" 145 Or at 584-85.

*See also, Kulchar v. Kulchar,* 1 Cal 3d 467, 82 Cal Rptr 489, 462 P2d 17, 39 ALR3d 1368 (1969).

Here the plaintiff, unlike *Pierpoint v. Pierpoint,* 9 Or App 11, 495 P2d 1236 (1972), has not established that the property settlement agreement was unfair or inequitable nor that any fraud respecting it was practiced upon the plaintiff.

She has in fact accepted all of its benefits, satisfied the judgment and successfully resisted an effort to modify its alimony provision. In that proceeding to modify she made no claim of fraud nor sought an upward revision of alimony. And, for a period of almost two years after restoration of her competency during which with her full advance knowledge the defendant remarried,[2] she made no ef-

---

[2] See 24 Am Jur 2d 589, 590, Divorce and Separation § 466, where it is stated:

"Notwithstanding the existence of the power to vacate a decree after the marriage of the plaintiff, it has been said that there is a manifest reluctance to do so, that the power should be exercised with great caution, and that whether a court of equity should exercise its power to vacate a divorce decree after the remarriage of the prevailing party rests in the sound discretion of the court and depends upon the facts of the particular case. The court will scrutinize the case carefully to determine whether laches affects the right to relief. It has been stated that the petitioner is required to

fort to attack the decree or the property settlement which it approved.

In *Beckley Nat. Bank v. Boone,* 115 F2d 513 (4th Cir 1940), *cert denied* 313 US 558, 61 S Ct 835, 85 L Ed 2d 1519 (1941), the court said:

> "* * * The rule of law is well established that a judgment rendered against an insane person not represented by a guardian or committee is not on that account void; and it will not be set aside even upon direct attack on the ground of insanity alone. To set it aside there must also be shown a meritorious defense to the claim. * * *" 115 F2d at 518.

■ The policy of the law in Oregon concerning property settlement agreements is set out in *Taylor v. Taylor,* 154 Or 442, 60 P2d 942 (1936):

> "The law favors the maintenance of the marital relation but it does not frown upon contracts between husband and wife, entered into in good faith, not tainted with fraud, and without undue advantage being taken by either party in the settlement of their property rights in contemplation of living separate and apart or of divorce. When such contracts are entered into and are just and equitable, they will be held binding on the parties thereto * * *." 154 Or at 445.

*See also, Pierpoint v. Pierpoint,* supra.

■■ From the foregoing authorities it is clear that whether or not to vacate a decree of divorce taken by default and to set aside its property settlement agreement is within the sound discretion of the trial court,

---

show that he is acting from good motives, and not from any expected personal advantage, and that he must establish the grounds for setting aside the default decree 'by the clearest and most satisfactory evidence.' * * *"

*See also,* Annotation, 12 ALR2d 153 (1950).

whether before or after the remarriage of one of the parties, to be upset only upon a clear showing of an abuse of that discretion. *Carmichael v. Carmichael,* 106 Or 198, 211 P 916 (1923); *Evans v. Evans,* 60 Or 195, 118 P 177 (1911). We conclude that no such showing has been made here.

Affirmed.