666 P.2d 1151 (1983)
105 Idaho 140
SOUTHERN IDAHO PRODUCTION CREDIT ASSOCIATION, a corporation, Plaintiff-respondent,
v.
Bernardo RUIZ, acting by and through the guardian and conservator of the person and estate of Bernardo Ruiz, Rupert Goicoechea, Defendant-appellant.
SOUTHERN IDAHO PRODUCTION CREDIT ASSOCIATION, a corporation, and T.W. Stivers, Plaintiff-respondents,
v.
Billy J. ANDERSON, Sheriff of Lincoln County, Idaho, Defendant, and
Bernardo Ruiz, acting by and through the guardian and conservator of the person and estate of Bernardo Ruiz, Rupert Goicoechea, Defendant-appellant.
Rupert GOICOECHEA, as guardian and conservator of the estate of Bernardo Ruiz, a single man, Plaintiff-appellant,
v.
SOUTHERN IDAHO PRODUCTION CREDIT ASSOCIATION, a corporation; and T.W. Stivers and Winifred Stivers, husband and wife, Defendant-respondents.
Nos. 13985, 13986 and 14178.
Supreme Court of Idaho.
July 15, 1983.
*1152 John T. Lezamiz, of Hepworth, Nungester & Felton, Twin Falls, for defendant-appellant.
William J. Langley, Twin Falls, for plaintiff-respondent Southern Idaho Production Credit Ass'n.
William Parsons, of Parsons, Smith & Stone, Burley, Idaho, for plaintiff-respondents T.W. and Winifred Stivers.
BAKES, Justice.
This case involves three trial court decisions consolidated on appeal. The three cases will be referred to according to their trial court designations, No. 4561, No. 4666, and No. 5100. This appeal is taken from a denial of motions to set aside default judgments entered in Nos. 4561 and 4666, and from a grant of summary judgment to the defendants in No. 5100. The appellant, Bernardo Ruiz, asserts that he was mentally incompetent at the time he was served in Nos. 4561 and 4666, and thus an award of a default judgment against him was improper. He also asserts that the trial court erred in granting summary judgment to the defendants in No. 5100, an equitable action to set aside the judgments in Nos. 4561 and 4666 or, in the alternative, seeking a right to redeem foreclosed property either through tolling of the statutory right of redemption, or enforcement of an equitable right of redemption.
From approximately 1968 through 1975, the Southern Idaho Production Credit Association (SIPCA) extended a line of credit to Leandro Ruiz and appellant Bernardo Ruiz, his son, as a partnership, and to Bernardo Ruiz individually. Leandro Ruiz died in 1971. In 1973 Bernardo Ruiz executed a security agreement in favor of SIPCA, covering real and personal property. On August 18, 1976, SIPCA filed action No. 4561 against Ruiz seeking foreclosure of the real property covered by the 1973 security agreement. Ruiz was personally served on August 18, 1976. On November 9, 1976, a default judgment was entered in No. 4561 against Bernardo Ruiz for a sum of $37,620.62 representing principal, interest on the loan, costs and attorney fees. On December 2, 1976, notice of the sale of the real property was posted and published. On December 28, 1976, the real property in question was sold at a sheriff's sale to T.W. and Winifred Stivers, for $39,000. However, the sheriff refused to deliver a certificate of sale because of an error in the legal description of the property, as previously published. On February 3, 1977, SIPCA and Stivers filed an action, No. 4666, against the sheriff to compel execution of the certificate of sale. Ruiz was also named as a defendant in that case and was personally served, and his default was entered on March 2, 1977. The district court entered judgment in No. 4666 compelling the delivery of the certificate of sale.
On November 15, 1978, Bernardo Ruiz was judicially declared incompetent. Rupert Goicoechea was appointed as guardian of his estate. On December 11, 1978, an action, No. 5100, was filed by Rupert Goicoechea, on behalf of Bernardo Ruiz, *1153 against SIPCA and T.W. and Winifred Stivers, asking that the default judgments in Nos. 4561 and 4666 be set aside and Bernardo Ruiz be allowed to redeem the property. It was not until July 25, 1980, however, that motions to set aside the defaults were filed in the actions themselves (4561 and 4666). Affidavits of several persons in the community were submitted on behalf of appellant in all three cases, indicating that Bernardo Ruiz had a well known reputation in that community as a mental incompetent. Affidavits were also filed on behalf of SIPCA asserting that Ruiz appeared to be rational when he dealt with them, and additionally by both SIPCA and Stivers, stating that they were unaware of Bernardo Ruiz's alleged incompetence.
The trial court denied the motions to set aside the defaults in 4561 and 4666, because they were not filed within the time required by I.R.C.P. 60(b). The court then denied the motion for summary judgment in No. 5100, because there were two material factual disputes upon which the case would turn: (1) whether Bernardo Ruiz was incompetent (and at what times), and (2) whether the SIPCA knew that Bernardo Ruiz was incompetent. The court indicated that the plaintiff would have to prove both elements to recover. The parties later stipulated that Bernardo Ruiz was incompetent at all times on and after August 18, 1976 (the date of service in the original action, No. 4561), and that SIPCA and Stivers were unaware of his incompetence.[1] The trial judge then entered a summary judgment for the defendants, and plaintiff appeals.
We will consider the trial court's denial of motions to set aside the defaults in Nos. 4561 and 4666 together, and then will consider the propriety of granting summary judgment in No. 5100 separately.

I
Appellant first argues that a default judgment, taken against an incompetent, violates I.R.C.P. 55(b)(2).[2] He urges that failure to comply with I.R.C.P. 55(b)(2) voids the default judgments. Appellant then argues that since the judgments in Nos. 4561 and 4666 are void, then under I.R.C.P. 60(b)(4),[3] the judgments can be set aside within a reasonable time. Appellant claims that since he moved to set aside those judgments within a reasonable time, the trial court erred in denying the motions.
The trial court denied the motions, ruling that they were not filed within a reasonable time. We affirm the trial court's judgment in Nos. 4561 and 4666, but not because the motions were not filed within a reasonable time. Where a trial court made the proper decision, but relied on an erroneous theory, this Court can affirm on the proper theory. Matter of Revello, 100 Idaho 829, 606 P.2d 933 (1979).
Assuming, as the parties have stipulated, that appellant was incompetent at the time judgment by default was entered, in violation of I.R.C.P. 55(b)(2), that violation would, at most, render the resulting judgment voidable, not void. Several courts have examined this question, and ruled that an entry of judgment against an incompetent, even in the absence of a guardian, does not render the judgment void. See, e.g., Kemppainen v. Finckh, 12 Wash. App. 175, 528 P.2d 485 (Wash. App. 1974); Brandt v. Brandt, 9 Or. App. 1, 495 P.2d 1205 (Or. 1972). Thus, I.R.C.P. 60(b)(4) *1154 would be inapplicable in the present case, and appellant's only avenue for relief to set aside the default would be under I.R.C.P. 60(b)(6).[4]
The time period during which a motion must be made under Rule 60(b)(6) is specifically limited, by the rule itself, to six months. Since appellant failed to file his motion within the time period prescribed, the trial court did not err in denying the motions in Nos. 4561 and 4666.

II
In No. 5100 the issues are somewhat different. Rupert Goicoechea, Bernardo Ruiz's guardian, filed No. 5100 asserting either a tolling of the statutory right of redemption or an equitable right of redemption.[5]
Appellant's first argument is inapposite. He bases his argument on I.C. § 5-213,[6] which provides for a tolling of a statute of limitations during the incompetency of a plaintiff. He argues that this section, included in Title 5 of the Idaho Code, should also apply to Title 11 of the Idaho Code, which applies to redemptions of property. I.C. § 5-213 applies to extend the time for filing of civil actions. A redemption such as the one we are concerned with here is a different situation. A mortgagor, to redeem his property, need not file an action, but must merely tender the proper amount to the seller at the foreclosure sale, and he redeems his property. The sale itself places title in the seller, but upon redemption the effect of the sale is terminated. Because of the effect of redemption on the finality of the sale, and upon title to real property, the legislature has expressly limited the statutory right to redemption to one year. We see nothing to indicate that the legislature intended the tolling provisions for civil actions to apply to the redemption procedures under Title 11. Not only is there no mention of Title 5 in Title 11 itself, but I.C. § 5-213 is itself expressly limited to "time in this title," which deals only with the time for commencement of civil actions. I.C. § 5-201. Thus, I.C. § 5-213 does not apply to toll the statutory right of redemption.
The trial court ruled that in order to claim an equitable right of redemption, Goicoechea would have to prove that the Stiverses or SIPCA knew of Ruiz's incompetence, or show wrongful conduct on the part of SIPCA or the Stiverses. The trial court relied on Steinour v. Oakley State Bank, 45 Idaho 472, 262 P. 1052 (1928). In Steinour, this Court recognized that the common law equitable right of redemption was not subject to the time restraints of the statutory right of redemption. In Steinour, this Court allowed an equitable right of redemption after the one year statutory time to prevent a party with unclean hands from benefitting from his wrongful conduct. Relying upon Steinour, the trial court concluded that an equitable right of redemption could be granted only upon a showing of wrongful conduct. Because the *1155 parties later stipulated that SIPCA and the Stiverses did not know of Ruiz's incompetence, the trial court granted a summary judgment to the defendants.
The trial court was correct in noting that Idaho does recognize an equitable right to redeem property, as do many states. In Steinour, the debtor was misled by the purchaser into believing that the statutory period for redemption would be extended. The Court found that an equitable right of relief might exist based upon the facts alleged which indicated that the purchaser was guilty of wrongful conduct.
Like Steinour, nearly all states require a showing of some sort of wrongful conduct on the part of the purchaser before allowing the debtor an equitable right of redemption. This Court in Steinour noted policy reasons for allowing an equitable right of redemption.
"Courts of equity ... may, upon a proper bill declaring ... fraud, mistake or other circumstances appealing to the discretion of the chancellor, relieve a debtor whose property has been sold from failure to redeem within the statutory period... . The court cannot award the right to redeem under the statute, but merely refuses to allow a party with unclean hands to benefit from his wrongful induction of a debtor into a trap from which the law cannot extricate him, and strips the wrongdoer of the title which the debtor intended to and would have otherwise redeemed; the debtor being required to pay at a later date what he would have paid at the time demanded by law." 45 Idaho at 482, 262 P. at 1053.
In allowing an equitable right of redemption upon a showing of wrongful conduct, the Court in Steinour was applying the limited common law right based on equitable principles. However, the Court in the Steinour case did acknoweldge that in addition to wrongful conduct, a court of equity may "relieve a debtor whose property has been sold from failure to redeem within the statutory period" based upon "other circumstances appealing to the discretion of the chancellor." 45 Idaho at 482, 262 P. 1052. While we agree with the general rule set out in the Steinour case that in order to allow an equitable right of redemption there must be some showing of wrongful conduct on the part of the person against whom relief is sought, we conclude that where the debtor, whose statutory rights of redemption have passed was an incompetent from the date of the filing of the original complaint, that such incompetency is an "other circumstance" within the meaning of the rule set out in Steinour which would justify a court of equity to examine the transaction to determine whether equitable relief should be granted to the debtor. Since it is admitted that the debtor Ruiz was incompetent from and after the time of filing of the foreclosure action by SIPCA, we reverse the order of the trial court which determined as a matter of law that he was precluded from giving equitable considerations to the plaintiff's claim, and remand for further consideration.
It is appropriate that we give some direction to the trial court in making the equitable evaluation in this case, particularly where the record discloses no fault or wrongful conduct on the part of the purchaser at the foreclosure sale. A granting of an equitable right of redemption is, in effect, a balancing of the equities that exist on either side of the dispute. By reversing the trial court's summary judgment, we do not intimate that such a right should be affirmatively granted in this case. For example, in Mollerup v. Storage Systems Int., 569 P.2d 1122 (Utah 1977), the court balanced the equities, but came out in favor of the purchaser at the redemption sale. We hold only that the appellant should be allowed a chance to fully develop the facts before the trial judge in an attempt to show that the equities are balanced in his favor. The respondent should have an equal opportunity, recognizing that the burden of proof lies with the appellant.
One of the factors which should be considered by the trial court on remand in arriving at its decision is the adequacy of the sale price at foreclosure. It appears from the record that the price paid by the *1156 Stiverses, $39,000, while less than what the record suggests was the market value, is nevertheless substantial and not the nominal price considered by some courts as a factor in favor of the debtor. See Arnold v. Gebhardt, 43 Colo. App. 387, 604 P.2d 1192 (Colo. App. 1979); Humpich v. Drake, 44 S.W. 632 (Ky. 1898). See also Graffam v. Burgess, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886) (sale will not be set aside for inadequacy of price unless coupled with other circumstances indicating its unfairness). Another factor present in this case, as it appears from the record, is that Bernardo Ruiz is still in possession of the land in question and thus the granting of an equitable right of redemption would not necessitate the dispossessing of the Stiverses from the property. Conversely, the Stiverses paid their $39,000 at the time of purchase, and from the record it appears that they have had no income from the property, may have incurred some expenses regarding taxes, etc., to preserve the property, and have not had the benefit of any return on their $39,000. They should be entitled to a reasonable rate of return on their money. Furthermore, it is our opinion that, in view of the fact that the Stiverses appear to be without fault in this transaction, consideration should be given to the costs and legal expenses incurred by them in preserving their property.
These and other equitable considerations should be considered by the trial court in determining whether or not in its discretion the appellant should be given an equitable right of redemption. As in all other cases, the trial court's decision, whether pro or con, will be sustained by this Court if supported by substantial competent evidence.
The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.
Reversed and remanded. No costs or attorney fees allowed.
DONALDSON, C.J., and HUNTLEY, J., concur.
SHEPARD, J., would affirm the orders and judgment of the trial court and dissents without opinion.
BISTLINE, Justice, dissenting.
My vote is to reverse in each of the three cases, and therein I differ in the views of the majority of the Court. I join the Court in reversing No. 5100 and believe that the views expressed in Part II of the Court's opinion are sound insofar as they go. As to Part I, I am firmly convinced that, as with Part II, there should be a remand for further proceedings, and further proceedings in all three cases should include the right of the parties to amend their pleadings, if necessary, have further discovery if it is felt necessary, and take such further action which any party believes fully necessary to present the issues involved. In particular, one matter that might need further development is how it came about that Bernardo Ruiz retained for the probating of his father's estate the same attorney who apparently, according to an affidavit in the file, at all times represented SIPCA. Nothing in the present record sheds any light on this situation, and as a matter of sheer surmise, one could speculate that SIPCA, knowing of the death of the father, and in order to clear the possible defect in title to the real property which was the security for advancements made over the years to Bernardo Ruiz and his father, deemed it advisable that title to the real property be cleared into the name of Bernardo Ruiz. It is extremely difficult to conceive of an incompetent Bernardo Ruiz who would on his own volition come to the conclusion that there was a necessity for going to the expense of probating his father's estate. In connection with this facet of the case, there is further concern that nothing shows that the attorney for SIPCA and who had been the attorney for Bernardo Ruiz a short five years before, directed any letters or communications to Bernardo Ruiz advising him of the forthcoming mortgage foreclosure, yet he did not respond to the inquiries and demands of SIPCA. Undoubtedly, such letters or communications were directed to Bernardo Ruiz, but if so, the record does not *1157 reflect this. If not so, it is at the least a very strange situation.

I
I would have joined the Court's opinion, but I am not satisfied that the views reflected therein display a sufficient understanding of the basic nature of the case presented or of the law which governs situations such as was laid before the district court. The opinion of the Court makes the controversy appear more complex than it essentially is  a determination which is readily reached by paying careful attention to the two civil actions filed in district court where all that was involved initially was the statutorily required single action by which may be foreclosed a mortgage of real property and a security instrument encumbering personal property. Civil action No. 4561 filed on August 18, 1976, was that single action. That action went by default, and, as the Court's opinion acknowledges, this took place by reason of the admitted incompetence of Bernardo Ruiz. The record establishes that at the hearing of evidence requisite to the entry of the default judgment counsel for SIPCA presented a prepared decree of foreclosure which purported to confer upon SIPCA the right to, at the sheriff's sale pursuant to the decree of foreclosure, direct the sheriff to sell the real property of Ruiz without first resorting to the personal property  both classes of property having been encumbered to SIPCA to secure the single indebtedness owed by Ruiz. This was highly questionable, and so far as I understand our Idaho case law and statutory law, was without authority or precedent  and very likely beyond the court's jurisdiction and hence void on the face of the record. Moreover, the action going to decree by default, it becomes necessary to go to the complaint to ascertain if its allegations and prayer for relief would have put Ruiz (assuming that he was not mentally incompetent) on notice that SIPCA would ultimately take a decree which authorized the sale of his real property without first resorting to the encumbered and foreclosed personal property  considerable of which Ruiz owned and had encumbered to the bank. The following is a partial list of the encumbered personal property:

 89 head of cattle
 31 head of sheep
 1 1960 IHC utility tractor
 1 IHC Model 55 hay baler
 1 Case side rake
 1 IHC mower
 4 hay wagons
 2 camp wagons
 1 IHC disc
 1 3-section steel harrow
 1 corrugator
 1 cultivator
 1 Eversman leveler
 1 rollover scraper
 1 field hay loader
 1 hay piler
 1 A-C tractor
 1 A-C 22-hole grain drill
 1 A-C Fertilizer drill
 1 IHC 2-bottom 2-way plow
 1 ditcher
 1 Marquette electric welder
 2 water tanks and troughs
 1 A-C disc
 1 chopper
 1 water wagon
 20 ton baled hay
 50 bushels mixed grain

The record discloses that SIPCA's complaint did not so put Ruiz on notice, and accordingly, under Idaho case law, the foreclosure decree is void on the face of the record by reason of affording, or, better put, purporting to afford relief the right to which was neither alleged nor prayed for in SIPCA's complaint. It has forever been the law in Idaho that on a defendant's default the plaintiff may not obtain more relief than that which was alleged and prayed for in the complaint.
The extremely unusual procedure here utilized  that of purporting to afford a form of relief which runs directly contrary to case and statutory law  by reason of its not having been pleaded or prayed for  *1158 rather clearly suggests that it was an afterthought which came about when the default of Ruiz was entered. A reason for such an extreme deviation suggests itself. Although an incompetent Ruiz could not comprehend the meaning of legal papers served upon him, and would not likely bring his unknown plight to anyone else's attention, it very likely would have been a far different situation had the sheriff commenced gathering up the encumbered cattle, machinery and equipment, and crops which had also been foreclosed upon along with the realty. For instance, neighbors of Ruiz, if of the same caliber and substance as most farm people in Idaho, would surely have taken some action on his behalf upon it being brought forcefully to their attention that Ruiz was being sold out by SIPCA. The procedure for selling real property, however, is for certain not so apt to bring the matter to anyone's attention  other than to those who make a practice of reading notices of sheriffs' sales of real property which are printed in designated newspapers; this factor in turn leads to a logical second point of inquiry  that of the reason for a second civil action having to do with the same foreclosure of the same real and personal property  and once again a procedure for which there is no precedent. The decree of foreclosure in Civil No. 4561 was entered on the 9th day of November, 1976. The sale was advertised for the 28th day of December, 1976, and the record shows that it took place as scheduled. I am unable to find in the record how well the foreclosure sale was attended, or if there were any bidders other than Mr. Stivers. The record does establish that Mr. Stivers was the purchaser at the sale, bidding in at a round figure of $39,000, which was a few dollars more than the total indebtedness declared owed by Ruiz in the decree of foreclosure, plus costs of action including attorney fees, and incidental costs of sale. Following the sale of the real property, none of the personal property foreclosed upon being proposed for sale, or sold, it was discovered that the legal advertisements of the sale printed in the newspaper describe the real property which would be sold by the sheriff did not conform to the legal description of the real property which Ruiz owned, which property he had mortgaged, and which property had been foreclosed upon by SIPCA. In short, the real property advertised for sale did not include a 40-acre parcel which Ruiz owned and which was part of his farm. As any practitioner knows, this does create a problem  but ordinarily not a big problem  and as to whose problem it is depends on the circumstances. If the purchaser at the sheriff's sale knew of the sale by reason of the printed advertisement, and if he has had any experience with legal titles, then that purchaser knew exactly what he was buying, knew what he was paying, and is in no position to complain. If the party who foreclosed derives enough money from the sale, here SIPCA, it is in no position to complain. Ruiz would lose forty acres less than he otherwise might have lost  assuming that he knew anything about what was going on and comprehended it  which is precluded by the concession here made that he was incompetent at all times pertinent.
But, if the purchaser, from sources other than the newspaper legal advertisement, knew of the sale, and knew that the entire Ruiz farm was supposed to be exposed for sale as one parcel, that purchaser would very likely want the entire farm, especially if he acquired it for $39,000, and it had just recently been appraised at a value of $65,000. The record does show that a cost of the foreclosure action was a title report, and it may very well be that Mr. Stivers in that manner obtained knowledge of the extent of the Ruiz real property upon which SIPCA had a mortgage and upon which property it would be foreclosing. So, as far as the purchaser Mr. Stivers was concerned, there was a problem if he thought at the sheriff's sale he was buying the entire $65,000 Ruiz farm for $39,000. It is not readily seen, however, how a purchaser so situated and who had not been financially injured, has any remedy, assuming that the property which was advertised was worth the price paid. In any event, assuming that a purchaser should be allowed to obtain the full *1159 benefit of his anticipated bargain, the problem still remains that there must be a publication of the legal description of the property which the sheriff will sell and will at a proper time thereafter deed to the purchaser. Without the proper description of the property being sold, the sale will either be void in its entirety, or void as to any property which the sheriff attempts to deed without there having been a proper publication, and a proper posting as well. As practitioners of any experience know, the problem is cured by an order of the district court annulling the sale which took place, and directing a second sale with attendant new posting and publishing of notices. It has happened many times and at best is a nuisance. At worst, however, for the purchaser who has obtained a substantial bargain, it presents the possibility of other persons becoming aware of the sale and running the price up to an amount which causes the bargain to dissipate.
Here there was no request of Judge Kramer, who was the judge who had entered the decree of foreclosure, to enter an order directing the sheriff to reschedule the sale of the entire Ruiz farm. It is much doubted that he could have been prevailed to enter such an order unless it was shown that the error in publication resulted in the purchaser, Mr. Stivers, being financially injured as a result of the error. For reasons undisclosed by the record before us, Judge Kramer was apparently bypassed after the error in the legal advertisement was discovered, although he had presided in the foreclosure action and signed the decree which directed the foreclosure sale. One might surmise that neither SIPCA nor the purchaser, Mr. Stivers, wanted to lay before Judge Kramer the unconscionably low price for which the real property did sell. It is beyond dispute under Idaho case law, as is the general rule in all jurisdictions, that the court which directs a foreclosure sale can set the sale aside when the price is inordinately low. Here, just weeks before the sale, an expert appraiser employed by SIPCA testified before Judge Kramer as to the value of the Ruiz real property and, based upon that testimony, Judge Kramer entered a finding that the property's value was $65,000. $65,000 may have been a minimum value of the property, as it is generally known, and of which courts can take judicial notice, that banks and credit corporations are ordinarily very conservative in setting values on real property upon which they propose to extend credit or make a loan. It is difficult to conceive of a district judge in Idaho who, after entering such a finding and upon thereafter learning that the property sold for little over one-half of its appraised value, would not order that it be resold, doing so with specific directions that it be advertised commercially as well as through legal advertisements, and/or, perhaps offered in smaller parcels. Judge Kramer, however, had nothing submitted to him insofar as the record shows, and no further proceedings whatever occurred in civil action No. 4561 which was the action in which had to be filed any further proceedings which had to do with the validity of the foreclosure sale. Even had Judge Kramer been for some reason temporarily unavailable, and had SIPCA, or Mr. Stivers, or both, sought in civil action No. 4561 some remedy by which Mr. Stivers could be awarded all of the Ruiz farm and thus have the full benefit of his anticipated bargain, it is again doubted that another district judge, looking at the file and seeing the finding of a $65,000 valuation, would contrive some way in which to oblige Mr. Stivers and SIPCA other than setting the first sale aside and ordering a second sale  which Mr. Stivers might find to be to his detriment if some other bidders got wind of the sale and the possibility of the bargain, and showed up thereat. Idaho judges generally are interested in seeing indebtednesses paid, but not interested in impoverishing debtors while unjustly enriching their creditors. Many states, including our neighboring state of Washington, by statute permit a court in entering a decree of foreclosure to set an "upset price" below which a parcel of real property may not be sold by the sheriff without further hearings before the court. See RCWA 61.12.060.
*1160 On the claim that the sheriff refused to execute a certificate of sale to the entire Ruiz farm, civil action No. 4666 was filed, SIPCA and Mr. Stivers joining together as plaintiffs and naming as defendants Bernardo Ruiz and Sheriff Anderson. This was not destined to be long and protracted litigation. The incompetent Ruiz of course allowed the case to go by default. The sheriff lost no time in immediately filing an answer to the complaint and "the controversy" was immediately submitted to the Hon. Charles Scoggin, District Judge (Ret.), for resolution. "The controversy" allegedly was the sheriff's alleged uncertainty as to whether he could or could not lawfully and properly execute a sheriff's certificate of sale to real property which allegedly had been sold and purchased at a sheriff's sale, although one parcel thereof had never been described in the statutorily required newspaper publication. If the sheriff did entertain such doubts, he was entirely on sound ground, but he would be in all likelihood the first sheriff who ever had occasion to read and check the newspaper publication and legal description. At any rate, the sheriff's answer admitted essentially all allegations of the complaint in the action brought by SIPCA and Mr. Stivers, other than to admit the sheriff's uncertainty.[1] Neither the complaint nor the answer disclosed that Judge Kramer in civil action No. 4561, the foreclosure action, had, just weeks before, fixed the value of the entire Ruiz farm at $65,000. Nothing in the short record in civil No. 4666 shows any contention by Mr. Stivers that he would receive less than full value for his money were he to be given the certificate of sale to the property the description of which was published in the newspaper. Thus, it rather clearly appears that civil action No. 4666 is highly suspect. It was improperly filed, as there was then pending the foreclosure action which had taken jurisdiction over any and all questions which might arise from the conducting of the sheriff's sale. It also gives little appearance of a genuine contest, especially where the sheriff could have, in the foreclosure action, been directed to issue a certificate of sale, assuming that the court, which should have been Judge Kramer, found some legal basis for so ordering. When one keeps in mind that it was counsel for SIPCA, and not the sheriff himself, who effected the publication of the defective notice of sale, and also keeps in mind that it would ordinarily be counsel who would receive and file the affidavit of publication (paying that cost as well), it has to be an unusual sheriff indeed who happens to read the published legal description after the sale was over, and be astute enough to observe the error in the description. An affidavit in the record filed by counsel for SIPCA suggests that it was he who discovered the error in the legal description which the newspaper published. All considered, civil action No. 4666 appears to have had for its existence and purpose the circumvention of the foreclosure action by the initiation of an entirely separate lawsuit in order to obtain an order which purports to ratify and confirm the sale of the entire Ruiz farm, notwithstanding *1161 that the entire farm had not been described in the requisite legal publication. By circumventing the foreclosure action, which had exclusive jurisdiction of the proceedings at the foreclosure sale, SIPCA and Mr. Stivers may very well have been able to withhold from Judge Scoggin any actual knowledge that Judge Kramer had earlier entered a decree setting the value of the entire farm at $65,000. Although Judge Kramer's judgment was appended to the complaint filed by SIPCA and Mr. Stivers, it is not apparent from the record whether the $65,000 valuation was called to, or otherwise came to Judge Scoggin's attention. Nor is it possible to glean from the appeal record the legal theory upon which Judge Scoggin could predicate his determination that he was authorized to enter a judgment in civil action No. 4666 which confirmed a sale of real property made pursuant to a foreclosure decree entered in civil action No. 4561, and all at the same time, direct the sheriff to execute a certificate (and in time a deed) to the entire Ruiz farm. As might be expected in this not hotly contested action, No. 4666, plaintiffs SIPCA and Mr. Stivers stipulated with the defendant sheriff for a waiver of findings of fact and conclusions of law, thus leaving a record which showed only Judge Scoggin's decision which was simply this:
"THIS MATTER coming on regularly for hearing before the Honorable Charles Scoggin, Judge of the above entitled Court, on March 7, 1977, and the Plaintiffs appearing by their attorney, William J. Langley, and Defendant Billy J. Anderson, Sheriff of Lincoln County, Idaho, appearing by his attorney, William Stuart, Prosecuting Attorney of Lincoln County, Idaho, and Defendant Bernardo Ruiz not appearing in person or otherwise, and Summons having been personally served on said Defendant in Lincoln County, Idaho, and time for appearance having expired, the default of said Defendant having been properly entered as required by law whereupon hearing was duly held and documentary evidence produced and admitted in evidence and arguments of counsel heard and counsel having stipulated that findings of fact and conclusions of law are waived, and being fully advised in the matter,
"IT IS ORDERED, ADJUDGED AND DECREED that Defendant Billy J. Anderson, Sheriff of Lincoln County, Idaho, execute and deliver to Plaintiff T.W. Stivers Certificate of Sale containing the whole of the following described real property, to-wit:
"S 1/2 NE 1/4 of Section 13, Township 5 South, Range 18 E., B.M., and Lot 2, NE 1/4 NW 1/4 and SE 1/4 NW 1/4 of Section 18, Township 5 South, Range 19 E., B.M., all in Lincoln County, Idaho, together with all appurtenances and fixtures thereon and water and water rights and grazing rights appurtenant thereto.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Defendant Billy J. Anderson, Sheriff of Lincoln County, Idaho, pay to Plaintiff Southern Idaho Production Credit Association the sum of $38,029.93 to satisfy the foreclosure judgment, entered in Case No. 4561, Lincoln County, Idaho, and pay the cost of publication of $47.62 to the Lincoln County Journal, Shoshone, Idaho, and retain the sum of $16.25 for posting and $100 for Sheriff's commission for sale and pay the balance of $806.42 to Defendant Bernardo Ruiz.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all right, title and interest of Defendant Bernardo Ruiz to the whole of said real property as above described herein was sold to Plaintiff T.W. Stivers at Sheriff's auction sale on December 28, 1976, and said sale is approved and confirmed, and that Defendant Bernardo Ruiz has no further right, title or interest in said real property except for the right of redemption as provided by law.
"DATED this 7th day of March, 1977."
R., at 48-49.
There was no need, legal authority or justification for civil action No. 4666. When No. 4666 is examined side by side with No. 4561, the conclusion is inevitable that the *1162 final determination in No. 4666 is void for lack of jurisdiction as well as for having afforded relief beyond the power of the court to grant in that action.
Unfortunately, the Court's opinion merely acknowledges the existence of the two actions, where in law there can be only one, which is in my view not a small item, and on the contrary is a large item, and one worthy of the Court's consideration. The utilization of the second action, No. 4666, is clearly one of the "other circumstances appealing to the direction of the chancellor" as an earlier Supreme Court so well put it in the Steinour case on which today's opinion relies in reversing the trial court's denial of relief in the independent action, No. 5100. Clearly, "other circumstances" include the entry of a default decree in No. 4561 which granted relief the right to which had neither been alleged nor prayed for. Equally clear, "other circumstances" include the circumvention of Judge Kramer's explicit findings, based on SIPCA's own proof, that the Ruiz farm had a value of not less than $65,000, the circumvention taking place by reason of an improper utilization of a second action and another judge. For my part, on the record before us, I am strongly inclined toward a holding that both of the judgments, No. 4561 and 4666, are void on the face of the record in each, and for that reason should be set aside. It is true that that reasoning was not suggested to the trial court and was not advanced in this Court. The reason for the omission is readily seen. As the Court's opinion points out, motions to set aside the default judgments in No. 4561 and No. 4666 were not filed in those actions until July 25, 1980, which was just a very short time before Judge Granata rendered his decisions on those motions when he was at the same time reaching his decision in the independent action, No. 5100, which had been filed much earlier, on the 11th day of December, 1978. Obviously, as counsel for Ruiz's guardian became more deeply involved in the No. 5100 litigation, it became apparent that an independent action might not be the only, or might not be the proper, route to go, and accordingly counsel then decided to move directly against the final judgments in No. 4561 and No. 4666, asserting generally the same legal theories which were hopefully thought to sustain the claim for relief asserted in No. 5100. In this manner, the position of counsel for the guardian for Ruiz was much like that of the attorney for the defaulted Josephine Hancock, wife of Ray Hancock, who first filed an independent action for alleged fraudulent procurement of judgment, but on hitting shoals and snags, changed course a considerable time later and directed his attack in the actions which were under fire in the independent action. Counsel for the guardian in this case should not be faulted for what is not an inordinate delay under the circumstances presented, and should not be faulted for not having, on such short notice, ferreted out all of the problems with which No. 4561 and No. 4666 are plagued. See Gregory v. Hancock, 81 Idaho 221, 340 P.2d 108 (1959).[2] Moreover, although the district court erroneously denied relief on the basis of the motions not being made within a reasonable time, the Court in its opinion today declares that "this Court can affirm on the proper theory," a philosophy in which the Court indulges whenever expediency so requires. Of course, it should be conversely axiomatic that if the Court can affirm on a theory which was not presented below, it should equally be free to reverse *1163 "on the proper theory"  even though that theory was not advanced in the court below. However, that philosophy does not yet seem to have become a two-way street.
It is exceedingly difficult to follow the Court's explanation as to why the motions to set aside the default in No. 4561 and No. 4666 are barred by Rule 60(b). I find it difficult to understand the rule itself, let alone the application which the Court today makes. Obviously, learned counsel representing SIPCA and Mr. Stivers were as equally confused as am I, or they would have relied upon the rule, which they did not. Be that as it may, the record is clear that SIPCA and Mr. Stivers defended against the motions on the basis that they were not filed within a reasonable time, and the district court so ruled. Apparently, all five members of this Court believe otherwise, but four members of the Court are nevertheless willing to uphold the denial of the motions by a technical application of another facet of Rule 60(b), which neither SIPCA nor Mr. Stivers relied upon. If that can be done, and it is being done, it is just as logical, and does far more justice to direct the entry of an order setting aside the judgment on the grounds of voidness appearing on the face of the judgment roll in each of the cases, No. 4561 and 4666.
However, rather than bog down in a fruitless, semantical discussion of Rule 60(b), which I have conceded to not understanding, where the Court today is granting relief in the independent action, No. 5100, I look to another day when a better understanding of the Court's rule may be visited upon me.

II
I do not have any major problem in Part II of the Court's opinion. It recognizes that a court of equity will in proper circumstances, in effect, nullify a judgment, notwithstanding that the judgment may have somewhat aged. Had the Court simply reversed and directed a trial on the issues raised by the guardian for Ruiz in No. 5100, this opinion might not have been necessary.
There are many, many unanswered questions, and exactly the kind of questions which should be determined at trial, and not on motion for summary judgment. In my view, it is not of great moment whether Mr. Stivers knew or did not know of the incompetency of Bernardo Ruiz. The real issue is whether it is equitable that Mr. Stivers be allowed to keep the Ruiz property upon learning of his incompetency at all times pertinent. And, in my view, the primary factor is the consideration paid. Of that issue, the Court today says in its opinion that the consideration was "substantial and not the nominal price considered by some courts as a factor in favor of the debtor." If I could understand what is meant by a "nominal price" then I might not be concerned. The Court's opinion completely fails to lay out the singular fact that Judge Kramer, based on SIPCA's proof, entered the finding, required by I.C. § 6-108, that the value of the property was $65,000. While the Court may be declaring that the price paid is not disproportionate to the value of the property, $39,000 for a $65,000 property, the intimation is clearly there, and might very well be construed below as the law of the case  which would be extremely unfortunate and unjust. $39,000 is not a nominal sum, as we understand the use of "nominal" in relation to damages; but as to whether it is a substantial sum, that is a matter for consideration in the trial court.
In my view, a main equitable consideration is the validity of the judgments in No. 4561 and No. 4666 for reasons which I have earlier discussed. In connection therewith, I am again concerned with the Court's intimation that "the Stiverses appear to be without fault in this transaction." I do not believe that an appellate court should so indulge in attempting to flavor further proceedings upon remand.
Had Mr. Stivers bought the property directly from Bernardo Ruiz for $39,000, not knowing of his incompetency, it is difficult to believe that there is in the State of Idaho, or in the entire country, a court that would not set adide the transaction as inequitable and unfair. Basically, it would *1164 amount to a case of unjust enrichment at the expense of an incompetent. The fact that the transaction in this case was "cleared" through the district court actions in No. 4561 and No. 4666 does little to alter the fact that an unjust enrichment has taken place at the expense of an incompetent. Does the transaction become sacrosanct by reason of the fact that the Idaho court system supplied the conveyance by which Mr. Stivers acquired title? I think not. And in this case the court proceedings are far from being beyond reproach and may by many be considered prima facie fraudulent, at least constructively.
No. 4666 was clearly, as I have pointed out, an unauthorized unprecedented action, and insofar as it affected the rights of Bernardo Ruiz was at least constructively fraudulent, even though no fraud was intended, and for that reason is clearly voidable. Even had not the Steinour Court adopted the theory of equitable redemption relief, relief should have otherwise been fully available in a court of equity. Everyone enjoys a bargain, and Mr. Stivers is not to be faulted for wanting to retain the bargain which he obtained as a result of the questionable procedures in civil action No. 4666. Whatever the rules may be, where a competent person is involved in a situation such as the one today laid before the Court, it is an entirely different ball game than where an incompetent is involved.
NOTES
[1] Bernardo Ruiz was never actually dispossessed of the real property involved in this case, and as far as the record reflects he still remains in possession.
[2] "RULE 55(b)(2). DEFAULT JUDGMENT BY THE COURT  PERSONS EXEMPT FROM.  In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, or other such representative who has appeared therein... . ."
[3] "RULE 60(b). MISTAKES, INADVERTENCE, EXCUSABLE NEGLECT, NEWLY DISCOVERED EVIDENCE, FRAUD, GROUNDS FOR RELIEF FROM JUDGMENT ON ORDER.  On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (4) the judgment is void; ... ."
[4] Rule 60(b)(6) reads "any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), (3) and (6) not more than six (6) months after the judgment, order, or proceeding was entered or taken."
[5] "VI. That despite the expiration of the strict statutory period for exercising the right of redemption, the Court may under such circumstances grant plaintiff, for and on behalf of Bernardo Ruiz, an additional period of time to exercise the right of redemption granted by Idaho Code § 11-401 et seq."
[6] "5-213. PERSONS UNDER DISABILITIES  RECOVERY OF REAL PROPERTY.  If a person entitled to commence an action for the recovery of real property, or for the recovery of the possession thereof, or to make any entry or defense founded on the title to real property, or to rents or services out of the same, be at the time such title first descends or accrues, either:

... .
"2. Insane; or,
... .
"The term during which such disability continues is not deemed any portion of the time in this title limited for the commencement of such action or the making of such entry or defense, but such action may be commenced, or entry or defense made, within the period of five (5) years after such disability shall cease, or after the death of the person entitled who shall die under such disability; but such action shall not be commenced or entry or defense made after that period."
[1] The only allegation in plaintiffs' complaint not admitted by Sheriff Anderson is that contained in Paragraph VIII, which reads:

"The Defendant Sheriff conducted the auction sale of said real property as set forth in his Notice of Sale at 11:00 a.m. on December 28, 1976, on the front steps of the Lincoln County Courthouse, 111 West B, Shoshone, Idaho, and at said time and place said Defendant Sheriff duly and regularly held public auction of said real property and read in full the Notice of Sheriff's Sale as set forth on Exhibit C attached hereto and announced to the group assembled that sale was being held for the whole of said real property as one unit, and said Defendant Sheriff then and there sold all the right, title and interest of said Defendant Bernardo Ruiz in said real property to the highest and best bidder, Plaintiff Stivers, for the sum of $39,000 which sum said purchaser then and there paid to said Sheriff in lawful money of the United States of America." R., p. 3.
Sheriff Anderson did not deny this entire allegation but admitted
"so much of Paragraph VIII that establishes a Sheriff's Sale was held at the alleged place and time, at public auction, that said Notice was read in full, that Plaintiff Stivers was the highest bidder for the sum of $39,000.00 which sum was paid to Defendant in lawful money of the United States of America which he continues to hold in trust."
R. p. 25.
[2] Gregory v. Hancock involved an action by a woman alleging conspiracy by her husband and one Gregory to defraud her by first foreclosing a real estate contract for default and second by petitioning for divorce, the papers in both actions being fraudulently sent to an improper address. The Court there stated:

"Where extrinsic fraud has been perpetrated in obtaining a judgment the defendant is not confined to his statutory remedy to set the judgment aside by reason of his mistake, inadvertence, or excusable neglect. The equity power of the district court to vacate a judgment obtained by means of extrinsic fraud is inherent, not statutory, and is not subject to the time limitations imposed by statute, I.C. § 5-905, and may be exercised after the lapse of the statutory time, in the discretion of the court."
81 Idaho at 227, 340 P.2d at 111 (citations omitted).